IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MINESHA R., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-2080-G-BN |
| | § | |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Minesha R. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision should be reversed.

## Background

Plaintiff alleges that she is disabled as a result of depression and bipolar disorder. After her application for supplemental security income ("SSI") benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on April 13, 2016. *See* Dkt. No. 13 (Administrative Record ["Tr."] at 32-68 (Hearing Transcript)). At the time of the hearing, Plaintiff was 25 years old. She is a high school graduate and has no past relevant work. Plaintiff has not engaged in substantial gainful activity since March 24, 2014.

The ALJ found that Plaintiff was not disabled and therefore not entitled to SSI benefits. *See id.* at 20-28 (ALJ Decision). Although the medical evidence established that Plaintiff suffered from affective disorder, the ALJ concluded that the severity of that impairment did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity to perform the full range of work at all exertional levels and has no past relevant work. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a cleaner/housekeeping, cleaner/polisher, and marker − jobs that exist in significant numbers in the national economy. Given her age, education, and exertional capacity for the full range of work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff contends that the hearing decision is not supported by substantial evidence and results from reversible legal error. More particularly, Plaintiff argues that: (1) the ALJ's decision to give "little weight" to the opinion of the consulting examining physician is not supported by substantial evidence; (2) in determining Plaintiff's residual functional capacity the ALJ failed to consider Plaintiff's ability to sustain full-time employment; and (3) the ALJ erroneously relied on activities of daily living in finding Plaintiff not disabled.

The undersigned concludes that the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions

are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial

evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Among the arguments Plaintiff makes is a single ground that compels remand – the ALJ's determination to give the examining psychiatrist's opinion"little weight"

because it is not supported by substantial evidence.[1] Instead, the ALJ gave great weight to the opinions of two State agency non-examining physicians that contradicted the examining psychiatrist's opinion.

The Court must determine whether substantial evidence supports the ALJ's findings. Concluding that the ALJ's findings were not supported by substantial evidence would be "appropriate only if no credible evidentiary choices or medical findings supported the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal quotation marks omitted).

"The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Spellman v. Shalala,* 1 F.3d 357, 364 (5th Cir. 1993); 20 C.F.R. § 404.1527(d)(2). A treating source is a claimant's "physician, psychologist, or other acceptable medical source" who provides or has provided a claimant with medical treatment or evaluation and who has or has had an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1502. A treating source opinion cannot be rejected absent good cause for reasons clearly

---

[1] By recommending remand of this case for further administrative proceedings, the undersigned does not suggest that Plaintiff is or should be found disabled.

articulated in the hearing decision. *See Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir. 2001).

Although more weight is generally given to the opinion of an examining physician, even though she did not treat the claimant, than to a non-examining physician's opinion, *see* 20 C.F.R. § 404.1527(d)(1), consulting examiners are not entitled to the special deference afforded to treating physicians, *see Robinson v. Astrue,* 271 F. App'x 394, 396 (5th Cir. 2008). Moreover, subject to specific requirements for the analysis and explanation required for rejecting or discounting certain physicians' opinions in some circumstances, an ALJ is free to reject all or portions of any physician's opinion when the overall evidence supports a contrary conclusion. *See Cromwell v. Astrue,* No. 4:10-cv-61-Y, 2011 WL 666282, at *7 (N.D. Tex. Jan. 21, 2011) (citing *Martinez v. Chater,* 64 F.3d 172, 176 (5th Cir. 1995)), *rec. adopted* 2011 WL 666279 (N.D. Tex. Feb. 14, 2011).

A one-time examining consultant is not entitled to the weight of a treating doctor. *See Robinson*, 271 F. App'x at 396. With non-treating doctors' opinions, ALJs are free to "[incorporate] the limitations [found] consistent with the weight of the evidence as a whole." *Id*. But more weight is generally given to the opinion of an examining physician like consultative examiner– even though she did not treat Plaintiff – than to a non-examining physician's opinion. *See Nicaragua v. Colvin*, No. 3:12-cv-2109-G-BN, 2013 WL 4647698, at *6 (N.D. Tex. Aug. 29, 2013) (citing 20 C.F.R. § 404.1527(c)(1)); *see also Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990) (ALJ

-7-

may rely on a non-examining physician's assessment only where it does not contradict the examining physician).

Even in the case of a non-treating physician such as a state agency medical consultant, the ALJ may not ignore medical opinions and must explain in his decision the weight that the ALJ gives to those opinions. *See Lockridge v. Colvin,* No. 3:12-cv-4135-BN, 2014 WL 1255745, at *8 (N.D. Tex. Mar. 27, 2014) (citing SSR 96-6p, 1996 WL 374180, at *2 (S.S.A. July 2, 1996)); *see also Helbing v. Astrue*, No. 4:11-cv-704-Y, 2012 WL 6719469, at *12 (N.D. Tex. Oct. 29, 2012), *rec. adopted*, 2012 WL 6709666 (N.D. Tex. Dec. 27, 2012).

The determination of residual functional capacity ("RFC") is the sole responsibility of the ALJ, *see Taylor v. Astrue,* 706 F.3d 600, 602-03 (5th Cir. 2012), and the ALJ considers all relevant medical and other evidence in making the RFC determination, *see* 20 C.F.R. § 404.1545(a)(3); SSR 96-5, 1996 WL 374183, at *5. Such a finding does not constitute an improper medical opinion by the ALJ but instead an assessment of Plaintiff's capacity to work based on all of the evidence in the case record. The ALJ therefore is permitted to draw reasonable inferences from the evidence in making her decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded in part by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations

in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

Here, the ALJ found that Plaintiff has the RFC to perform the full range of work at all exertional levels with non-exertional limitations. According to the ALJ, Plaintiff can understand, remember, and carry out simple instructions; make simple decisions; attend and concentrate for an extended period; and keep up pace. But Plaintiff is to have no contact with the public; no work that involves team work where she must work in tandem with coworkers; and only incidental or occasional contact with supervisors – which the ALJ explained to mean that, since Plaintiff is maintaining pace, she would see supervisors in the morning and maybe in the afternoon but that there would be no need to address her performance on the job. *See* Tr. at 23.

In making the RFC determination, the ALJ gave the examining psychiatrist's opinion little weight but gave the non-examining, consulting physicians's opinions great weight. The major difference between those opinions is that the examining psychiatrist found Plaintiff cannot sustain concentration and persist in work-related activity at a reasonable pace, but the non-examining physicians found that she can.

On August 12, 2014, Plaintiff was examined by Christina Ryser, Ph. D. *See* Tr. at 25 (ALJ's decision), 301-08 (Dr. Ryser's report). The ALJ summarized Dr. Ryser's report in his decision.

According to the ALJ, Dr. Ryser observed that Plaintiff drove herself to the appointment and arrived thirty minutes early. Plaintiff reported that she was unable to work due to her bipolar disorder with mood swings and memory issues. Specifically,

Plaintiff complained of sadness, crying spells, loss of interest and pleasure in activities she once enjoyed, increased appetite, decreased sleep, lower energy, psychomotor retardation, indecisiveness and difficulty concentrating, feelings of guilt and worthlessness, and suicidal ideations. Plaintiff reported receiving mental health treatment but no past psychiatric hospitalizations. Plaintiff also reported that she had had about 15 jobs, with the longest lasting for six months. Her occupational problems were that she would not go to work and would cuss at the manager.

Despite Plaintiff's mental health symptoms and occupational problems, Dr. Ryser's mental status examination showed Plaintiff had good hygiene and grooming with fair eye contact. Plaintiff had no involuntary movements or excessive motor activity. Her speech was normal, and she showed no problems with expressing herself. She was appropriately talkative and presented no clear evidence of a formal thought disorder. She denied any current suicidal ideation as well as plans or intent for self-harm behavior or homicidal ideations. She reported feeling as if someone was behind her or standing at her door, and hearing noises, but she denied any history of obsession or delusions. Although Plaintiff characterized her mood as angry, Dr. Ryser indicated that overall Plaintiff exhibited mildly irritable effect evidenced by her facial expressions and verbalizations. Plaintiff's intelligence was below average, and she had limited concentration and memory skills. She was oriented to time, place, person, and situation, and her judgment and insight were fairly good. Dr. Ryser assessed Plaintiff with bipolar disorder but indicated that she was currently stable despite experiencing

problematic symptoms, which appeared to be exacerbated during times of stress. *See id.* at 25.

According to Dr. Ryser, Plaintiff can understand, carry out, and remember one- or two-step instructions, although she may have difficulty with detailed/complex instructions. Plaintiff cannot sustain concentration and persist in work-related activity at a reasonable pace. Plaintiff appears to have difficulty maintaining effective social interaction on a consistent and independent basis, with supervisors, co-workers, and the public, also struggling in dealing with normal pressures in a competitive work setting. *See* Tr. at 307.

In making the RFC determination, the ALJ gave Dr. Ryser's opinion little weight because he found it to be inconsistent with the record as a whole. The ALJ stated that, although he agreed the evidence suggests Plaintiff is limited to understanding, remembering, and carrying out only simple unskilled work, the evidence suggests that she retains the ability to sustain concentration and persistence despite her mental health symptoms. For example, during the consultative examination, Plaintiff was able to count by twos, from twenty back to two, and mental status examinations from Metrocare indicated her attention was normal. The ALJ also noted that Plaintiff was able to drive a motor vehicle, which requires sustained concentration. When the consultative examiner asked her what household chores she did, she answered that she did everything. Specifically, Plaintiff reported that she did the laundry, which is a multi-step task. Plaintiff reported that she could prepare simple meals and sometimes complete meals. And Plaintiff was able to shop in stores

-11-

for food and clothes and pay bills. Moreover, although Plaintiff received some assistance from her mother, she was the primary caretaker for her six-year-old son, who also has mental health issues. *See id.* at 26.

Conversely, the ALJ gave the State agency consulting physicians's opinions great weight because he found them to be consistent with the record as a whole.

At the initial level, Cate Miller, M.D., reviewed all of the available evidence in the record, including Dr. Ryser's psychological consultative examination, on September 12, 2014, and completed a psychiatric review technique form. *See* Tr. at 71-74. Dr. Miller determined that Plaintiff's primary medically determinable impairment was severe affective disorder. Dr. Miller further determined that Plaintiff had marked restrictions in the ability to understand, remember, and carry out detailed instructions and moderate restrictions in maintaining attention and concentration for extended periods, working in coordination with or in proximity to others without being distracted by them, accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, and responding appropriately to changes in the work setting. Dr. Miller added the explanation that Plaintiff can understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work setting.

At the reconsideration level, Robert White, Ph. D., reviewed the evidence in the record on February 23, 2015, and agreed with Dr. Miller's assessments. *See id.* at 80-92.

In his decision giving the non-examining physicians' opinions great weight, the ALJ explained that the State agency medical consultants found that Plaintiff could understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with coworkers and supervisors, and respond appropriately to changes in the work setting. *See id.* at 25, 77, 90. The ALJ further explained that the State agency medical consultants' opinions were supported by mental status examination findings that Plaintiff was calm and cooperative with a good attitude. *See* Tr. at 25-26 (citing to 299 (Child and Family Guidance Center Mental Status Examination); 305 (Dr. Ryser's report); 357, 362, 373, 375, 379, 385, 390, 395, 399, 403, 408, 412, 417, 421 (Metrocare Services Psychiatric Assessments)). The ALJ also noted that, although Dr. Ryser's consultative examination showed Plaintiff had limited immediate memory skills, Plaintiff's delayed and remote memory were intact, as she was able to recall three words after five minutes and she was able to provide historical information. *See id.* at 306. In addition, her thought processes were organized and coherent. *See id.* at 306, 357, 362, 373, 375, 379, 385, 390, 395, 399, 403, 408, 412, 417, 421. And, despite the consultative examination indicating that Plaintiff had limited concentration skills, she was able to drive independently to the exam from her home, which was reportedly several miles away, suggesting she could concentrate for extended periods. She also reported that she was able to do other household chores such as cleaning and laundry, prepare simple meals,

shop for food and clothes, and pay bills. *See id.* at 246. Moreover, Plaintiff testified that she was the primary care giver for her six-hear-old son who has special needs. *See id.* at 38, 45, 52.

Here, the ALJ erred by relying on the non-examining physicians' opinions when they contradicted the examining physician's opinion that Plaintiff cannot sustain concentration and persist in work-related activity at a reasonable pace. *See Vila*, 895 F.2d at 1024. "'An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice,'" *Kneeland v. Berryhill*, 850 F.3d 749, 760 n.53 (5th Cir. 2017) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)). For example, a non-examining physician's testimony "that he disagreed with [the examining physician's] assessment" did not constitute substantial evidence where the non-examining physician "failed to identify any inconsistency between the [examining physician's] diagnosis and the medical record, except for his unsupported opinion." *Gudgel*, 345 F.3d at 470.

The non-examining physicians in this case did not explain why they disagreed with Dr. Ryser's opinion. And, although the opinions of the examining and non-examining physicians were based on substantially the same medical evidence, and the non-examining physicians also reviewed Dr. Ryser's opinion, there is no indication of what evidence, if any, caused the non-examining physicians to reach a contradictory opinion concerning Plaintiff's ability to maintain concentration and pace.

-14-

And the reasons used by the ALJ to give Dr. Ryser's opinion "little weight" were not found by the State agency medical consultants. Instead, the ALJ's issues with Dr. Ryser's opinion appear to be based largely on his lay interpretation of what Dr. Ryser could and should have concluded. They do not constitute evidence that contradicts Dr. Ryser's findings. The ALJ referenced other medical evidence to support the decision to give the examining psychiatrist's opinion little weight, but he seemingly picks and chooses the evidence that supports his conclusion and fails to consider or discuss contradictory evidence.

The Fifth Circuit has explained that, as a non-medical professional, the ALJ is not permitted to "draw his own medical conclusions from some of the data, without relying on a medical expert's help." *Frank v. Barnhart*, 326 F.3d 618, 621-22 (5th Cir. 2003). The Court of Appeals reasons that "'[c]ommon sense can mislead'" and "'lay intuitions about medical phenomena are often wrong.'" *Id.* (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). The ALJ "cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 383 (5th Cir. 2000) (citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984), among other cases).

In assessing the weight he gave to the examining and non-examining psychiatrists' opinion, the ALJ refers to mental status examinations in medical records from Metrocare that indicated Plaintiff's attention was normal. But the ALJ does not mention evidence in those same medical records of consistent symptoms of racing thoughts, anxiety, paranoia, hallucinations, nervousness, mood swings and irritability, restlessness, depressed mood, insomnia and anhedonia. *See* Tr. at 318-19, 321, 324,

-15-

325, 330, 336, 340-41, 345, 348, 357. Nor does he mention that those medical providers prescribed a number of psychotropic medications in varied dosages for her symptoms of depression, psychosis, mood, insomnia and anxiety, and, while she did have some short improvement with her symptoms, she continued to experience anger, irritability, insomnia, psychosis, and suicidal and homicidal ideation. *See id.* at 319, 321, 325, 336, 341, 345, 349, 358, 413, 418, 421.

The ALJ also relies on Dr. Ryser's recitation of Plaintiff's activities of daily living. The ALJ reasons that Plaintiff can sustain concentration and pace because she can drive a motor vehicle and can count by twos, from twenty back to two. The ALJ bolsters that reasoning by reference to Plaintiff's function report in which she states that she does laundry, prepares simple meals, shops in stores for food and clothes, pays bills, and, with assistance from her mother, cares for her son, who also has mental health issues. But this reasoning is not based on medical evidence that contradicts the examining physician's opinion. Because the ALJ has drawn his own medical conclusions from some of the data, including data from Dr. Ryser's report in which she came to the opposite opinion, and without relying on a medical expert's help, his determination to give the examining psychiatrist's opinion little weight is not supported by substantial evidence. *See Frank*, 326 F.3d at 621-22.

Had the ALJ properly accorded more weight to the opinion of the examining psychiatrists than he did to the non-examining physicians, the ALJ may have found Plaintiff to be disabled. Accordingly, Plaintiff was prejudiced by the ALJ's determination to give the consulting examining psychiatrist's opinion little weight.

**Recommendation**

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 16, 2018

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE